# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| JOSH HOLLIDAY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 3:08-00737 |
| v. ) | Judge Wiseman / Knowles |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner of Social Security denying Plaintiff Supplemental Security Insurance ("SSI") benefits, as provided under Title XVI of the Social Security Act ("the Act"), as amended. The case is currently pending on Plaintiff's Motion for Judgment on the Administrative Record. Docket Entry No. 14. Defendant has filed a Responsive Motion for Judgment on the Administrative Record and a Supporting Memorandum, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. Docket Entry Nos. 16 and 17. Plaintiff has filed a Reply. Docket Entry No. 20.

For the reasons stated below, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED and that the decision of the Commissioner be AFFIRMED.

1

# I.  INTRODUCTION

Plaintiff filed his application for Supplemental Security Income ("SSI") benefits on April 29, 2003, alleging that he had been disabled since March 27, 2003, due to seizures, vision problems, back, elbow and knee pain, and depression and anxiety.  *See, e.g.,* Docket Entry No. 12, Attachment ("TR"), TR 97-100, 105, 112, 124-127, 139.  Plaintiff's application was denied both initially (TR 78-79) and upon reconsideration (TR 80-81).  Plaintiff subsequently requested (TR 89) and received (TR 66-69) a hearing.  Plaintiff's hearing was conducted on October 20, 2005, by Administrative Law Judge ("ALJ") John P. Garner.  TR 522-546.  Plaintiff and Vocational Expert, Kenneth Anchor, appeared and testified.  *Id.*

On April 27, 2006, the ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations.  TR 300-309.  Plaintiff timely filed a request for a review of the hearing decision.  TR 318-320. On November 16, 2006, the Appeals Council remanded the case to the ALJ to obtain and evaluate further evidence of Plaintiff's mental impairments.  TR 314-317.

On September 6, 2007, ALJ Garner held Plaintiff's second hearing.  TR 547-574. Plaintiff and Vocational Expert Gordon Doss appeared and testified.  *Id.*  On October 17, 2007, the ALJ again issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations.  TR 50-58.  Specifically, the ALJ made the following findings of fact:

> 1. The claimant has not engaged in substantial gainful activity since the alleged onset date.
>
> 2. The medical evidence establishes that the claimant has adjustment disorder with depressed mood and a personality disorder, N.O.S, which are found to be "severe"

>                   impairments, but are not of listing level security. Appendix
>                   I to Subpart P, Regulations No. 4.
>
>          3.       The claimant is not entirely credible for the reasons cited
>                   above.
>
>          4.       The claimant has the residual functional capacity for a
>                   limited range of medium work, as stated in the body of this
>                   decision.
>
>          5.       The claimant has no past relevant work.
>
>          6.       The claimant is able to make a successful adjustment to
>                   other work, according to vocational testimony.
>
>          7.       The claimant was not under a "disability" as defined in the
>                   Social Security Act at any time through the date of this
>                   decision.

TR 57.

On November 5, 2007, Plaintiff timely filed a request for review of the hearing decision.[1]
TR 15. On May 14, 2008, the Appeals Council issued a letter declining to review the case (TR 9-12), thereby rendering the decision of the ALJ the final decision of the Commissioner.[2] This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g). If the Commissioner's findings are supported by substantial evidence, based upon the record as a whole, then these findings are conclusive. *Id.*

## II. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and

---

[1] The Record contains a duplicate request for review of the hearing decision dated October 30, 2007. TR 17. This request, however, does not contain a date noting its reception by the Social Security Administration. *Id.*

[2] The Appeals Council considered additional evidence that it subsequently included as part of the Record. TR 13-14.

testimonial evidence of Record.  Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.[3]

### III.  CONCLUSIONS OF LAW

#### A.  Standard of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process.  *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991).  The purpose of this review is to determine (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision.  *Landsaw v. Secretary*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion."  *Her v. Commissioner*, 203 F.3d 388, 389 (6th Cir. 1999) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Commissioner,* 105 F.3d 244, 245 (6th Cir. 1996) (*citing Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)).

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences.  *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  In fact, even if the evidence could also support a different conclusion, the decision of the Administrative Law Judge must stand if substantial evidence supports the conclusion reached.  *Her*, 203 F.3d at 389 (*citing Key v. Callahan*, 109 F.3d 270,

---

[3] Many of the medical records contained in the Record refer to Plaintiff as "Charles R. Grannis."  Plaintiff's name was legally changed to "Josh Holliday" by Order of the Probate Court on July 28, 2004.  TR 104.

273 (6th Cir. 1997)). If the Commissioner did not consider the record as a whole, however, the Commissioner's conclusion is undermined. *Hurst v. Secretary*, 753 F.2d 517, 519 (6th Cir. 1985) (*citing Allen v. Califano,* 613 F.2d 139, 145 (6th Cir. 1980) (*citing Futernick v. Richardson,* 484 F.2d 647 (6th Cir. 1973))).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnosis and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

## B. Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied. 42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process as follows:

> (1) If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.
>
> (2) If the claimant is not found to have an impairment which

5

significantly limits his or her ability to work (a "severe"
impairment), then he or she is not disabled.

(3) If the claimant is not working and has a severe impairment, it
must be determined whether he or she suffers from one of the
"listed" impairments[4] or its equivalent. If a listing is met or
equaled, benefits are owing without further inquiry.

(4) If the claimant does not suffer from any listing-level
impairments, it must be determined whether the claimant can
return to the job he or she previously held in light of his or her
residual functional capacity (e.g., what the claimant can still do
despite his or her limitations). By showing a medical condition
that prevents him or her from returning to such past relevant work,
the claimant establishes a *prima facie* case of disability.

(5) Once the claimant establishes a *prima facie* case of disability,
the burden shifts to the Commissioner to establish the claimant's
ability to work by proving the existence of a significant number of
jobs in the national economy which the claimant could perform,
given his or her age, experience, education, and residual functional
capacity.

20 C.F.R. §§ 404.1520, 416.920 (footnote added). *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination. *Id.* In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's *prima facie* case by coming forward with

---

[4]The Listing of Impairments is found at 20 C.F.R., Pt. 404, Subpt. P, App. 1.

particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony. *See Varley v. Secretary*, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments; mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. § 423(d)(2)(B).

### C. Plaintiff's Statement Of Errors

Plaintiff contends that the ALJ erred in, 1) giving significant weight to the opinions of Dr. Jasnowitz and Dr. Edwards while giving reduced weight to the opinions of Dr. Ward and Dr. Anchor, 2) not making a specific credibility finding regarding the Plaintiff's testimony at the hearing, and 3) not asking for a reasonable explanation for the discrepancies between the vocational expert's ("VE") testimony and the job descriptions within the Dictionary of Occupational Titles ("DOT") in his decision. Docket Entry No. 15. Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be reversed with an immediate award of benefits to Plaintiff, or in the alternative, remanded. *Id.*

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is

7

overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (6th Cir. 1994).

**1. Weight Accorded to Medical Opinions**

Plaintiff first contends that the ALJ erroneously accorded little weight to the opinions of psychological examiner, Dr. Ward, and of disability consultant, Dr. Anchor, while according greater weight to the opinions of psychological examiner, Dr. Jasnowitz, and of state agency physician, Dr. Edwards. Docket Entry No. 15.

With regard to the evaluation of medical evidence, the Code of Federal Regulations states:

> Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.
> (1) Examining relationship. Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.
> (2) Treatment relationship. Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques *and is not inconsistent with the other substantial evidence in your case record*, we will give it

Case 3:08-cv-00737 Document 21 Filed 06/12/09 Page 8 of 19 PageID #: 101

> controlling weight.  When we do not give the treating source's
> opinion controlling weight, we apply the factors listed in
> paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the
> factors in paragraphs (d)(3) through (d)(6) of this section in
> determining the weight to give the opinion. ...
> 	(3) Supportability.  The more a medical source presents
> relevant evidence to support an opinion, particularly medical signs
> and laboratory findings, the more weight we will give that opinion.
> The better an explanation a source provides for an opinion, the
> more weight we will give that opinion. ...
> 	(4) Consistency.  Generally, the more consistent an opinion
> is with the record as a whole, the more weight we will give to that
> opinion.
> 	(5) Specialization.  We generally give more weight to the
> opinion of a specialist about medical issues related to his or her
> area of specialty than to the opinion of a source who is not a
> specialist.
> 		...

20 C.F.R. § 416.927(d) (emphasis added).  *See also* 20 C.F.R. § 404.1527(d).

As an initial matter, none of the opinions at issue was rendered by a treating physician. Dr. Ward, Dr. Anchor, Dr. Jasnowitz, and Dr. Edwards were examining and consultative physicians who evaluated Plaintiff with regard to his disability claims.

Plaintiff argues that the opinions of Dr. Ward and Dr. Anchor should have been accorded greater weight because they were the "additional evidence and further evaluation of the claimant's alleged mental impairments" required by the Appeals Council on remand, they were the most recent evaluations, and they were consistent with each other.  Docket Entry No. 15.

Defendant responds that the ALJ properly complied with the Appeals Council's Order to obtain and evaluate additional evidence of Plaintiff's mental condition before issuing a new decision.  Docket Entry No. 17.  Defendant also responds that the ALJ properly evaluated the medical opinion of Dr. Ward because the ALJ incorporated the findings of Dr. Ward into his decision.  *Id.*  Defendant further maintains that the ALJ appropriately discounted the medical

9

opinion of Dr. Anchor because he was the disability consultant hired by Plaintiff's attorney but had testified in Plaintiff's previous hearing as the vocational expert, and because the opinions he rendered in those capacities were contradictory. *Id*.

Plaintiff argues that the ALJ should have accorded greater weight to the opinions of Dr. Ward and Dr. Anchor because they were the most recent evaluations and the "additional evidence and further evaluation of the claimant's alleged mental impairments" required by the Appeals Council on remand. Docket Entry No. 15. While it is true that the referenced opinions of Drs. Ward and Anchor were the most recent opinions, and were the "additional evidence and further evaluation" required by the Appeals Council's Order of Remand, Plaintiff fails to cite any Regulation that requires an ALJ to give significant or controlling weight to opinions simply because they were the most recent or were in response to an Appeals Council's Order of Remand. Rather, an ALJ has the duty to review all of the medical and testimonial evidence relevant to a claim. 20 C.F.R. § 416.927(c). If the ALJ finds inconsistencies in the record, he will weigh all of the evidence to determine whether, based upon that evidence, disability within the meaning of the Act and Regulations exists. 20 C.F.R. § 927(c)(2). As will be discussed in greater detail below, the ALJ in the case at bar properly evaluated and detailed the findings of each examining or consulting physician before determining that Plaintiff was not disabled within the meaning of the Act and Regulations. TR 50-58.

Plaintiff also argues that the ALJ failed to apply the relevant factors required for weighing medical opinions under 20 C.F.R. § 416.927(d) to Dr. Anchor's opinion and failed to give an adequate explanation for according that opinion reduced weight. Docket Entry No. 15. Contrary to Plaintiff's assertions, however, the ALJ considered whether Dr. Anchor's opinion

10

was consistent with the other evidence of Record, and demonstrated that it was not. Specifically, Dr. Anchor's opinion as Plaintiff's disability consultant was contradicted by the opinions of Dr. Jasnowitz, Dr. Edwards, and Dr. Ward, as well as Dr. Anchor's own testimony as a vocational expert from the first hearing. TR 50-58, 229-231, 232-248, 430-439, 488-498, 540-544. Dr. Jasnowitz concluded that Plaintiff had a GAF level of 60-70, which the ALJ noted meant that Plaintiff had a mild functional impairment but generally functioned "pretty well." TR 54, 229-231. Dr. Ward concluded that Plaintiff was capable of day-to-day functioning, as demonstrated by his previously holding a job for two and one-half years and his attending college class. TR 55-56, 488-498. Dr. Edwards concluded that Plaintiff was capable of work, but would be better suited for jobs dealing with things rather than people. TR 56, 232-248. At the first hearing, Dr. Anchor found that Plaintiff was capable of performing a range of jobs based on the limitations of his performance. TR 540-544. Later, Dr. Anchor, in his new role as Plaintiff's disability consultant, concluded that Plaintiff was not competitive for employment opportunities. TR 54-55, 430-439. After evaluating all of the medical opinions, the ALJ appropriately accorded lesser weight to Dr. Anchor's opinion because his opinion contradicted his own previous testimony and assessment, as well as the other opinions of Record.

Although the ALJ did not specifically articulate how much weight he accorded to Dr. Ward's opinion, it is clear from the ALJ's opinion that he incorporated Dr. Ward's findings into his decision. TR 55-57. For example, he concluded that Plaintiff's suggestive psychotic behavior was contraindicated by his ability to hold down a job for approximately two and one-half years, perform all his activities of daily living independently, and persistently pursue a college degree. TR 57. These conclusions are derived from Dr. Ward's evaluation. TR 488-

11

498.

After considering in detail the opinions of Dr. Ward and Dr. Anchor, the ALJ accorded Dr. Anchor's opinion little weight because Dr. Anchor had testified at Plaintiff's previous hearing as a vocational expert, but acted as disability consultant hired by Plaintiff's attorney when he rendered the opinion considered in the second hearing. TR 54-57. While it would be improper for the Secretary to reject the favorable opinion of a consulting psychologist solely because the consultative examination was arranged for by the claimant's representative (*Blankenship v. Bowen*, 874 F.2d 1116, 1122 fn. 8 (1989)), as was discussed above, the ALJ rejected Dr. Anchor's opinion because it was inconsistent with the other evidence of Record. This determination was proper.

With regard to Plaintiff's argument that the opinions of Drs. Ward and Anchor were consistent with each other, the ALJ, in his discussion, did note findings that were consistent between the two opinions. TR 54-57. For example, the ALJ noted that Plaintiff presented with virtually the same symptoms to both examiners, that Plaintiff tested at average intelligence with both examiners, and that Plaintiff was difficult to evaluate for both examiners. *Id.* Despite these consistencies, however, the ALJ also noted inconsistencies between the two opinions. For example, the ALJ noted a finding of malingering by Dr. Ward but not by Dr. Anchor, as well as a finding of marked limitations in Plaintiff's ability to interact with co-workers by Dr. Ward but a finding of severe limitations in Plaintiff's ability to interact appropriately with co-workers by Dr. Anchor**.** *Id.* In addition to the inconsistencies between these two opinions, the ALJ demonstrated that these opinions were inconsistent with those of Drs. Jasnowitz and Edwards. TR 56.

12

When there are inconsistent opinions in the record, the final decision regarding the weight to be given to the differing opinions lies with the Commissioner. *See, e.g.,* 20 C.F.R. § 416.927(e)(2). After evaluating the Record as a whole, the ALJ determined that the opinions of Drs. Jasnowitz and Edwards were consistent with, and supported by, the Record. He therefore accorded them significant weight. This determination was proper. Plaintiff's argument fails.

**2. Assessment of Plaintiff's Credibility**

Plaintiff contends that the ALJ failed to adequately evaluate and assess the credibility of Plaintiff's statements as required by SSR 96-7P. Docket Entry No. 15. Specifically, Plaintiff argues that the ALJ failed to articulate "whether he found [Plaintiff's] testimony credible or not credible," and the ALJ failed to state "the amount of weight he assigned to [Plaintiff's] testimony." *Id*. Plaintiff also contends that the ALJ erred by rejecting Plaintiff's subjective complaints based on the fact that he received no formal mental health treatment. *Id*.

Defendant responds that the ALJ fully considered Plaintiff's testimony, specifically determined his credibility, and articulated the reasons for finding his assertions not fully credible. Docket Entry No. 17. Defendant also discounts Plaintiff's argument that the ALJ erroneously rejected Plaintiff's subjective complaints based his lack of undergoing formal mental health treatment.

With regard to the credibility assessment of an individual's statements, Social Security Ruling No. 96-7p states in pertinent part:

> 1. No symptom or combination of symptoms can be the basis for a finding of disability, no matter how genuine the individual's complaints may appear to be, unless there are medical signs and laboratory findings demonstrating the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms.

13

2. When the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms has been established, *the intensity, persistence, and functionally limiting effects of the symptoms must be evaluated to determine the extent to which the symptoms affect the individual's ability to do basic work activities. This requires the adjudicator to make a finding about the credibility of the individual's statements about the symptom(s) and its functional effects.*

3. Because symptoms, such as pain, sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, *the adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements* if a disability determination or decision that is fully favorable to the individual cannot be made solely on the basis of objective medical evidence.

4. In determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record. *An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence.*

5. It is not sufficient for the adjudicator to make a single conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. *The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.*

. . .

S.S.R. No. 96-7p (1996) (emphasis added)

The ALJ, when evaluating the entirety of the evidence, is entitled to weigh the objective

14

medical evidence against Plaintiff's subjective claims and reach a credibility determination. *See, e.g., Walters v. Commr of Soc Sec,* 127 F.3d 525, 531 (6th Cir. 1997); and *Kirk v. Secretary,* 667 F.2d 524, 538 (6th Cir. 1981). An ALJ's findings regarding a claimant's credibility are to be accorded great weight and deference, particularly because the ALJ is charged with the duty of observing the claimant's demeanor and credibility. *Walters,* 127 F.3d at 531 (*citing Villarreal v. Secretary,* 818 F.2d 461, 463 (6th Cir. 1987)). Discounting credibility is appropriate when the ALJ finds contradictions among the medical reports, the claimant's testimony, the claimant's daily activities, and other evidence. *See Walters*, 127 F.3d at 531 (*citing Bradley,* 862 F.2d 1224, 1227 (6th Cir. 1988); *cf King v. Heckler*, 742 F.2d 968, 974-75 (6th Cir. 1984); and *Siterlet v. Secretary*, 823 F.2d 918, 921 (6th Cir. 1987)). If the ALJ rejects a claimant's testimony as not credible, however, the ALJ must clearly state the reasons for discounting a claimant's testimony (*see Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994)), and the reasons must be supported by the record (*see King*, 742 F.2d at 975).

While Plaintiff contends that the ALJ gave only conclusory and insufficient statements as to his findings regarding Plaintiff's credibility, the ALJ simply did not do so. *See* TR 54-57. Rather, the ALJ carefully considered Plaintiff's statements along with the rest of the relevant evidence, specifically articulated his findings of fact, and provided the rationale for his decision using information contained in the Record. TR 54-57. The ALJ found that, based on the Record as a whole, Plaintiff possessed the ability to lift and carry 50 pounds occasionally and 25 pounds frequently. TR 56. The ALJ further found that Plaintiff had the ability to carry out simple instructions. *Id.* He also found that Plaintiff could, with difficulty, carry out detailed instructions. *Id.* The ALJ found that Plaintiff retained the ability to perform a limited range of

15

medium work, and further found that Plaintiff would be better suited working with things rather than people. *Id*. After fully evaluating the impact of Plaintiff's mental impairments on his ability to work, the ALJ found that Plaintiff indicated problems with depression and mood swings. TR 57. The ALJ further found that Plaintiff "operated in a bizarre manner." *Id*. The ALJ also found, however, that the evidence demonstrated that Plaintiff "grossly exaggerated his overall mental condition." *Id*. Additionally, the ALJ found that Plaintiff's suggestive psychotic behavior "was contraindicated by his ability to hold down a job for approximately two and one-half years; perform all his activities of daily living independently; and persistence at pursuing a college degree." *Id*. The ALJ, therefore, concluded that Plaintiff's subjective complaints were not fully credible. *Id*.

As has been demonstrated, the ALJ clearly articulated his reasons for not finding Plaintiff fully credible. Plaintiff's arguments that the ALJ failed to adequately evaluate and assess the credibility of Plaintiff's statements as required by SSR 96-7P, failed to articulate the weight he gave to Plaintiff's statements, and failed to articulate the reasons why he afforded them that weight, therefore, fail.

Additionally, contrary to Plaintiff's assertion that the ALJ erroneously based his rejection of Plaintiff's subjective complaints on the lack of formal mental health treatment, the ALJ actually noted a number of factors used in his credibility assessment of Plaintiff. TR 56-57. The ALJ noted that Plaintiff had received previous counseling at Middle Tennessee State University, but that Plaintiff had found the counseling to be unhelpful. TR 56. Additionally, the ALJ determined that, based on the evidence, Plaintiff was "grossly exaggerating his overall mental condition." TR 57. As noted above, the ALJ also found Plaintiff's subjective complaints not

16

fully credible based upon his "ability to hold down a job for approximately two and one-half years; perform all his activities of daily living independently; and persistence pursuing a college degree." *Id*. The ALJ's decision demonstrates that the ALJ did not simply reject Plaintiff's claims because he did not seek mental health treatment. His decision not to accord Plaintiff's statements full credibility was proper. This claim fails.

### 3. Discrepancy Between VE Testimony and the DOT Job Descriptions

Plaintiff maintains that the ALJ erred by not asking the VE for a reasonable explanation of the "discrepancies" between the VE's testimony and the DOT job descriptions, as required by SSR 00-4p. Docket Entry No. 15. Specifically, Plaintiff argues that the ALJ failed to explain how Plaintiff retained the ability to perform the jobs the VE testified were available when the Record contained evaluations indicating that Plaintiff had marked limitations in his ability to interact appropriately with co-workers. *Id*.

Defendant responds that Plaintiff did not establish that a discrepancy existed between the VE's testimony and the DOT. Docket Entry No. 17. Defendant argues that the ALJ had no duty to provide an explanation absent an established conflict. *Id.*

With regard to the use of VE testimony in disability decisions, Social Security Ruling 00-4p states in pertinent part as follows:

> [B]efore relying on VE or VS evidence to support a disability determination or decision, our adjudicators must:
> [1] Identify and obtain a reasonable explanation for any conflicts between occupational evidence provided by VEs or VSs and information in the Dictionary of Occupational Titles (DOT), . . . . and
> [2] Explain in the determination or decision how any conflict that has been identified was resolved.
> . . .

17

SSR No. 00-4p (Cum. Ed. 2000).

Although Plaintiff contends that a discrepancy exists between the VE's testimony and the DOT, the ALJ found the VE's testimony "consistent with the Dictionary of Occupational Titles." TR 57. Specifically noting that Plaintiff had an inability to appropriately interact with the general public, the ALJ found that Plaintiff would work better with things rather than people. TR 56. The ALJ posed hypotheticals to the VE asking which jobs, if any, would be available for a person who demonstrated a moderate impairment working with the general public and/or supervisors and a marked difficulty interacting with co-workers, but had the ability to perform medium jobs. TR 570-572. The VE testified that Plaintiff's ability to perform a dishwasher's job would not be impacted by those impairments. TR 572. The ALJ accepted the VE's testimony that Plaintiff would be able to perform the job of dishwasher and that there were a significant number of such positions available in the local and national economies. TR 57.

Because the ALJ specifically took into account Plaintiff's moderate impairment working with the general public and/or supervisors and his marked difficulty interacting with co-workers, and specifically posed a hypothetical to the VE that incorporated those impairments, the VE likewise took into account those impairments and the VE rendered an answer was consistent with the DOT. Plaintiff's argument fails.

## IV. RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED and that the decision of the Commissioner be AFFIRMED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has ten (10) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have ten (10) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within ten (10) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

_____
E. CLIFTON KNOWLES
United States Magistrate Judge